UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES FIDELITY AND GUARANTY COMPANY, ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | No. 3:07-1150 <br> Judge Echols |
| DAVID WEED, ) ) | |
| Defendant. ) | |

## MEMORANDUM

Plaintiff United States Fidelity and Guaranty Company ("Plaintiff") filed a Motion for Summary Judgment Against David Weed ("Defendant"). (Docket Entry No. 27.) Defendant filed a short response in opposition to the summary judgment motion (Docket Entry No. 37), along with the Affidavit of David S. Weed (Docket Entry No. 37, Ex. A). Defendant failed to comply with Local Rule 56.01(c) in that he did not file any responses to Plaintiff's separate Statement of Undisputed Material Facts. (Docket Entry No. 28.) Failure to respond to Plaintiff's Statement of Undisputed Material Facts within the time provided indicates that Defendant does not dispute the asserted facts for purposes of summary judgment. Local Rule 56.01(g). Defendant also did not file a separate legal memorandum in support of his opposition to the motion for summary judgment as required by Local Rule 7.01(b). Plaintiff filed a reply memorandum. (Docket Entry No. 39.)

Plaintiff also filed a Request to Take Judicial Notice of Adjudicated Facts (Docket Entry No. 31), to which Defendant did not file a response. It is well-settled that federal courts may take judicial notice of proceedings in other courts of record. Lyons v. Stovall, 188 F.3d 327, 333 (6th Cir. 1999); Tinker v. Sears, Roebuck & Co., 127 F.3d 519, 524 (6th Cir. 1997). Because the motion is

1

adequately supported, Defendant did not assert timely opposition to it, and the law permits the Court to take judicial notice of the prior state court proceedings, the motion will be granted.

## I. FACTS

On March 6, 1998, Defendant executed an Application for Miscellaneous Bonds in which he agreed to indemnify and save harmless Plaintiff from all demands, losses, costs, damages and expenses, including attorney's fees, which Plaintiff may incur by reason of having issued any surety bonds on Defendant's behalf (the "indemnity agreement"). Pursuant to the indemnity agreement, Defendant expressly agreed "THAT ANY PAYMENTS made in good faith by the said Company on account of any such liability, whether or not it is actually liable therefor, shall be conclusive evidence of the undersigned's liability hereunder." (Docket Entry No. 1, Ex. A at 2.)

Plaintiff issued a surety bond (the "bond"), number 064-S-MP5413 in the penal sum of $100,000.00 naming Defendant as principal, and the State of Tennessee, Department of Commerce and Insurance ("the State") as obligee. The bond was issued to assure certain obligations of Defendant to the State in his capacity as a Special Deputy Receiver ("the bonded obligations"). Pursuant to the surety bond, Defendant obligated himself to "well and truly perform the duties of his office and duly account for all monies which may come into his hands and shall abide by and perform all things which he shall be directed to do pursuant to the order of appointment and all future orders of appointment." (Docket Entry No. 1, Ex. B (capitalization omitted).)

Subsequent to the issuance of the bond, the State alleged that Defendant breached certain of his bonded obligations, including, but not limited to, his alleged failure to account for monies received and disbursed by him in his official capacity, his alleged negligence in the handling of monies in his official control, and the alleged misuse of such monies. Based on the alleged breach of Defendant's bonded obligations, the State made claim against the Plaintiff under the bond.

By letters dated June 16, 2006 and January 5, 2007, Plaintiff demanded that Defendant exonerate, indemnify, and hold Plaintiff harmless from all liability, loss, cost, and expense which it may incur as a result of the State's claim and to deposit collateral with Plaintiff in the sum of $100,000.00. Despite these demands, Defendant failed to undertake Plaintiff's defense or to otherwise successfully defend the State's claim. Defendant also failed and refused to deposit collateral with the Plaintiff against the State's claim.[1]

On June 20, 2006, in Davidson County Chancery Case No. 92-1120-I(II), Chancellor Carol L. McCoy entered an Order in which she stated that Defendant conceded liability to the State in the amount of $298,183.02 in funds missing from the liquidation estate of the United Physicians Insurance Risk Retention Group. On November 7, 2006, in Davidson County Chancery Case No. 02-167-III, Chancellor Ellen Hobbs Lyle considered Defendant's application for attorney's fees for his work as receiver on behalf of two non-profit corporations operating daycare centers in Memphis, Tennessee. Although there was no dispute that the services Defendant rendered were necessary and the rates charged by him were reasonable, the State opposed any attorney's fee award to the Defendant on the ground that its preliminary audit results showed Defendant intentionally or with gross negligence impermissibly transferred funds from other receiverships and advanced those funds to the daycare receivership resulting in loss to the other receiverships. The State contended that Defendant must forfeit fees due to his fraud or negligence. Chancellor Lyle made express findings of fact and conclusions of law that Defendant acted at least negligently with respect to his bonded

---

[1] Defendant alleged in his Answer to the Complaint that he offered to provide a defense to Plaintiff in the event litigation should be initiated and he also alleged that the State's claim was untimely and invalid. (Docket Entry No. 19, Answer ¶¶ 11-12.) Defendant did not address the first issue in his response to the summary judgment motion, but in any event, Plaintiff settled with the State and paid the full amount of the bond without litigation. The Court need not reach the merits of the second issue as explained later in this opinion.

3

obligations and that, due to his negligent and improper conduct, he caused significant loss to the State in excess of the $100,000.00 sum of the surety bond.

On November 22, 2006, in Davidson County Chancery Case No. 02-2456-II, Chancellor Carol L. McCoy considered Defendant's motion for interim attorney's fees and expenses relating to his work as receiver for a daycare center, Children's Palace Learning Academy, Inc. Chancellor McCoy concluded that Defendant was negligent in his conduct as a receiver in that he transferred funds from other receiverships to keep the daycare operating, resulting in a shortage to the other receiverships. She held that Defendant must forfeit his right to compensation due to his negligent conduct in the affairs of the receivership estates.

On February 27, 2007, Plaintiff paid the State $100,000.00 in full satisfaction of the State's claim under the bond. Pursuant to a release and assignment, the State assigned its claim against Defendant to the Plaintiff. (Docket Entry No. 1, Ex. D.) Plaintiff then demanded that Defendant reimburse it for its loss and expense, but Defendant failed or refused to indemnify and reimburse the Plaintiff.

This lawsuit followed. In the Complaint, Plaintiff alleged that Defendant breached the indemnity agreement (Count I); Plaintiff is entitled to reimbursement for its loss under the bond (Count II); as performing surety Plaintiff is equitably subrogated to the rights of the State against Defendant as to the amount paid by Plaintiff (Count III); and pursuant to the release and assignment, the State irrevocably assigned and set over to Plaintiff all rights, title, and interest in and to its claims, rights and remedies against Defendant (Count IV).

## II. STANDARD OF REVIEW

A party may obtain summary judgment if the evidence establishes there are not any genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Covington v. Knox County School Sys., 205 F.3d 912, 914 (6th Cir. 2000).

4

The moving party bears the initial burden of satisfying the court that the standards of Rule 56 have been met. See Martin v. Kelley, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate question to be addressed is whether there exists any genuine issue of material fact that is disputed. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); Covington, 205 F.3d at 914 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). If so, summary judgment is inappropriate.

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial. If the party does not so respond, summary judgment will be entered if appropriate. Fed. R. Civ. P. 56(e). The nonmoving party's burden of providing specific facts demonstrating that there remains a genuine issue of material fact for trial is triggered once the moving party shows an absence of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 325. A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### III. ANALYSIS

Plaintiff is entitled to summary judgment because there are no genuine issues of material fact for trial. In Count I, Plaintiff alleges that Defendant breached the indemnity agreement which he executed in consideration for Plaintiff's issuance of the surety bond. Indemnity agreements are enforceable under Tennessee law, and like other contracts, they are to be enforced according to their plain and unambiguous terms. National Surety Corp. v. Buckles, 219 S.W.2d 207, 208-209 (Tenn. 1949); Hardeman County Bank v. Stallings, 917 S.W.2d 695, 699 (Tenn. Ct. App. 1995). Defendant does not challenge the existence of the indemnity agreement or any of its terms. He is presumed to know the terms of the contract he signed. National Surety Corp., 219 S.W.2d at 209; Giles v.

5

Allstate Ins. Co., 871 S.W.2d 154, 157 (Tenn. Ct. App. 1993) . In the agreement, Defendant agreed to indemnify Plaintiff:

> from any and all liabilities, loss, costs, charges, suits, damages, counsel fees, and expenses of whatever kind or nature, which it shall or may, for any cause, at any time, sustain or incur, or be put to, by reason or in consequence of its having executed said bond.
>
> IF CLAIM IS MADE AGAINST THE COMPANY on the bond herein applied for the Company shall have the right to employ its representative to investigate the claim, and to charge all expenses of such investigation to the undersigned.
>
> THE UNDERSIGNED FURTHER AGREES, if any suit is brought on the bond herein applied for, to permit the Company to employ its own counsel to defend such suit; and to repay the Company counsel fees and all other costs and expense to which the Company may be put in defense of such suit.
>
> THAT ANY PAYMENTS made in good faith by the said Company on account of any such liability, whether or not it is actually liable therefor, shall be conclusive evidence of the undersigned's liability hereunder.

(Docket Entry No. 1, Ex. A at 2.)

The undisputed evidence establishes that Defendant admitted a loss to the State of more than $100,000.00 and the state chancery courts found that Defendant acted at least negligently in causing the loss to the State. Plaintiff presented evidence that it paid the State's claim for the full sum of the surety bond, $100,000.00, in satisfaction of the State's claim against the Defendant. Under the terms of the indemnity agreement, Plaintiff demanded that Defendant reimburse the bond loss and other expenses incurred, but Defendant did not do so. Therefore, Plaintiff has established Defendant's breach of the indemnity agreement, and Plaintiff is entitled to summary judgment on Count I.

In Count II, Plaintiff seeks reimbursement for the amounts paid pursuant to the surety bond. Equity provides such a remedy upon the surety's satisfaction of its principal's obligations. Henegar v. Brannon, 137 S.W.2d 889, 892 (Tenn. Ct. App. 1939). To establish the right to reimbursement, the surety must allege and prove the amount paid. Id. The undisputed evidence shows that Plaintiff

6

paid the bond amount to satisfy the State's claim. Pursuant to the common law doctrine of reimbursement, Plaintiff is entitled to summary judgment on Count II.

Tennessee also applies the doctrine of equitable subrogation, the basis of Plaintiff's Count III. Bankers Trust Co. v. Collins, 124 S.W.3d 576, 579 (Tenn. Ct. App. 2003) ("The cornerstone of the doctrine is the principle that 'substantial justice should be attained regardless of form, that is, its basis is the doing of complete, essential and perfect justice between all the parties without regard to form.'"). To be entitled to subrogation, the Plaintiff's "equity must be strong and [its] case clear, since it will not be enforced where the equities are equal[.]" Castleman Constr. Co. v. Pennington, 432 S.W.2d 669, 675 (Tenn. 1968). Again, the undisputed facts show that the equities weigh in favor of Plaintiff and equitable subrogation is appropriate. Plaintiff is entitled to summary judgment on Count III.

Finally, in Count IV, Plaintiff alleges it is the contractual assignee of the State pursuant to the written release and assignment executed by the State when Plaintiff paid the full amount of the surety bond to the State. By virtue of the assignment of rights, Plaintiff now stands in the shoes of the State. Because the undisputed evidence shows the Defendant breached his obligations to the State, and to Plaintiff as the State's assignee, Plaintiff is entitled to summary judgment on Count IV.

In his affidavit in opposition to the summary judgment motion, Defendant sets forth the history of the Tennessee Receiver's Office ("TRO") and contends that accounting practices (or the lack of them) in the TRO and the Tennessee Department of Commerce and Insurance allowed this claim to arise. He further contends that his daily efforts were directed to the time-consuming tasks of running the daycares in receivership and, because the State was at fault in failing to provide the accounting services Defendant requested, the State's claim on the surety bond was invalid. He also asserts that, as receiver, he sued Memphis First Community Bank for the return of Cherokee Children and Family Services' funds utilized to purchase part of the bank's stock, and Assistant

Attorney General Albert Partee told Defendant if he was successful in recovering any funds, some of the money should be used for the nonprofit daycares. When Cherokee Children's claims were settled and paid, $89,900.00 was deposited for the benefit of the nonprofit daycares in the TRO bank account. Defendant claims Plaintiff fails to give him any credit for the $89,900.00 and other amounts collected by the State Attorney General's office or the Department of Commerce and Insurance, if any. Defendant suggests there are two genuine issues of material fact in this case: whether Plaintiff should have paid the bond in view of the actions of the Tennessee Department of Commerce in depriving the TRO of funds for accounting services and whether Defendant should be given credit for the $89,900.00 and other amounts collected by the State Attorney General's Office or the Department of Commerce and Insurance, if any.

As Plaintiff points out, these issues were raised and decided in the prior proceedings in the state chancery courts. In Davidson County Chancery Court Case No. 02-167-III, Chancellor Lyle rejected each of the three defenses raised. (Docket Entry No. 27-2 at 9.) First, Defendant argued that the transfer of funds between receiverships was done pursuant to a well-known and agreed-to custom and that the Department of Commerce and Insurance and the Attorney General's Office assented to the custom. Chancellor Lyle rejected this contention as not established by the facts. Next, Defendant asserted that he was not provided adequate funding to pay for accountants. Chancellor Lyle recognized that the facts bore out Defendant's claim that his requests for payment for accounting services were scrutinized at length and that he could not obtain approval. However, Chancellor Lyle determined that Defendant had an obligation to the court and the receivership estates to bring the problem to light by court motion so that accounting support services could be funded and records kept. By failing to bring the matter to the court's attention, Chancellor Lyle concluded that Defendant neglected the critical duty of a receiver to maintain accountings on receiverships. While there may have been comparative fault of the State, Chancellor Lyle concluded

8

any such fault was not a complete defense to Defendant's neglect. Finally, Chancellor Lyle discussed Defendant's contention that he had an agreement with the Attorney General's Office that unpaid fees in some of the daycare receiverships would be paid for by recovery of funds in other daycare receiverships, particularly Cherokee Children and Family Services. The court found that Assistant Attorney General Al Partee did agree to such payment, conditioned on Defendant obtaining court approval of a fee agreement, and thus, there appeared to be facts to support a colorable claim by Defendant in the Cherokee Children and Family Services receivership for payment of his fees if court approval of the fee agreement was ultimately obtained in that case. However, Chancellor Lyle rejected the fee agreement as a defense to the Attorney General's motion to withhold fees from Defendant in the case before her. (Id. at 9-13.)

In Davidson County Chancery Court Case No. 02-2456-II, Chancellor McCoy found that Defendant transferred approximately $90,000.00 in funds he recovered on behalf of Cherokee Children and Family Services, as well as other amounts, to the daycare receivership account, but despite these deposits, the receivership account still was short approximately $200,000.00. (Docket Entry No. 27-2 at 20.) Thus, Chancellor McCoy did give Defendant credit for depositing $89,900.00 in the daycare receivership account. She concluded, however, that Defendant's negligence caused significant loss to some of the receivership estates entrusted to his care. (Id. at 22.)

Under the doctrine of collateral estoppel, issues that were actually litigated on the merits and were necessary to the outcome of a lawsuit may not be re-litigated in a subsequent lawsuit, even though the later suit involves a different cause of action. Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326-327 & n.5 (1979) ("Collateral estoppel, like the related doctrine of res judicata, has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation."). Under

the doctrine of collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation. Knox County Educ. Ass'n v. Knox County Bd. of Educ., 158 F.3d 361, 376 (6th Cir. 1998) (applying Tennessee law and citing also Montana v. United States, 440 U.S. 147, 153 (1979)).

Defendant had a full opportunity to litigate the defense issues he raises here in the prior cases before Chancellors Lyle and McCoy, and those issues were decided on the merits against him. The State was a party to those prior lawsuits, and Plaintiff stands in contractual privity with the State in this lawsuit through the release and assignment Plaintiff received from the State upon paying over the sum of the surety bond. Because Defendant's defenses are barred by collateral estoppel, as well as the related doctrine of res judicata, see Hutcherson v. Lauderdale County, 326 F.3d 747, 759 (6th Cir. 2003) (applying Tennessee law), there are no genuine issues of material fact for trial in this case.

## IV. **CONCLUSION**

For all of the reasons stated, United States Fidelity and Guaranty Company's Request to Take Judicial Notice of Adjudicated Facts (Docket Entry No. 31) and Motion For Summary Judgment Against David Weed (Docket Entry No. 27) will be granted. Judgment will be entered in favor of Plaintiff and against Defendant in the amount of $100,000.00 plus prejudgment interest from February 27, 2007, the date the claim on the surety bond was paid, as well as for taxable costs, nontaxable expenses, and attorney's fees incurred by Plaintiff in the prosecution of this action.

Plaintiff may file a motion for attorney's fees and nontaxable expenses pursuant to Local Rule 54.01(b)(1) - (3) no later than thirty (30) days after entry of final judgment. The motion should include a calculation of the amount of prejudgment interest sought. Defendant may file a response

within ten (10) days after the motion is filed in accordance with Local Rule 54.01(b)(3). There will be no reply. Plaintiff may seek taxable costs pursuant to Local Rule 54.01(a).

An appropriate Order shall be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE

11